## Shouffler *against* Coover.

The remedy by distress incident to a widow's annuity, ascertained by a proceeding in the Orphans' Court, in partition under the intestate laws, is not one to which there can be any equitable subrogation. It is a personal remedy which belongs to the widow, and which she cannot use for the benefit of another, who had previously paid the annuity to her.

If land subject to a widow's annuity, be divided into several parts, by the heir who takes it at the valuation in the Orphans' Court, the widow cannot apportion her annuity and make a several distress upon each part: she can distrain but once and for the whole amount.

**ERROR** to the Common Pleas of *Cumberland* county.

This was an action of replevin in the court below, in which John Coover was plaintiff, and Shouffler and Lobach defendants. The following are the facts of the case:

Joseph Lobach, the defendant, distrained the goods and chattels in the declaration mentioned by virtue of a warrant of distress from Valentine Shouffler and Magdalena his wife in right of his said wife, who was formerly the widow of John Starr of said county, dated the 20th day of April 1839. The claim is $62.36 yearly, from the 1st of April 1822, till the 1st of April 1839, with interest on each annual sum from the time it is alleged to have become due, making in all the sum of $1632.34. The distress was made upon a tract of land made up of several parcels, containing 121 acres 83 poles, more or less, in Allen township, in the possession of John Coover by his tenant, by virtue of a claim for the several sums of money above stated and alleged to be due to the defendants, as the interest upon one-third of the valuation of said land under the intestate laws as the property of said John Starr, deceased.

The said John Starr was seised at the time of his death, about the year 1800, of certain real estate consisting of three several tracts situated in Cumberland county, to wit: Two tracts partly in East Pennsborough and partly in Allen townships, containing 628 acres, and one other tract of woodland containing 68 acres more or less, situate in East Pennsborough. He left a widow, the said Magdalena, who intermarried with Valentine Shouffler, and five children, to wit: John who died soon after his father's death, William, Elizabeth, who intermarried with Henry Coover, also deceased, Jacob, and Magdalena. On the 16th of April 1803, William Starr, the eldest son of the said John Starr, presented his petition to the Orphans' Court for the partition or valuation of said real estate, agreeably to the intestate

[Shouffler v. Coover.]

laws of the commonwealth. It was held under advisement by the court, and on the 31st of May 1803, an inquest was awarded. In pursuance of the said writ of partition or valuation, Robert Grayson, high sheriff, duly made inquisition on the 16th June 1803, finding that the lands could not be parted and divided, and appraising the same, the large tract (embracing two tracts) at the sum of $14,798, the other at the sum of $149.33, and the inquisition was returned 26th July 1803, to the Orphans' Court on that day, as appears by an endorsement on the inquisition, " on motion to the court postponed until the first day of the next term." The following further endorsement is on the inquisition; "29th of August 1803, on motion the court confirmed the valuation to William Starr the petitioner" "*per curiam.*" No entry of this return or the endorsement are to be found on the docket, and no further proceedings appear by the docket to have been had thereon until the following 1st of December 1805; at an Orphans' Court then held it is thus contained: Jacob Starr, brother and heir at law of William Starr, late of East Pennsborough township, deceased, preferred a petition stating that the petitioner's brother, William Starr, lately died intestate without issue, leaving the petitioner and Henry Coover, son and only heir at law of Elizabeth Coover, deceased, late Elizabeth Starr, sister and heir at law of the said intestate—seised in his demise as of fee of and in a certain messuage and tract of land with the appurtenances, containing 230 acres, situate in East Pennsborough township. The petitioner therefore prayed the court to award an inquest to make partition of the premises aforesaid to and among the legal representatives of said intestate according to law, &c., or to value, &c., being part of the land above described. Inquest was awarded April 1st 1806, an inquisition was held finding that the land could not be divided, and it was appraised at $24.38 per acre. It being stated to the court that the said tract contained more land than was stated in the petition, William Ramsey was appointed an artist to re-survey the land and report the quantity, and the proceedings were held under advisement by the court. April 1st 1806, at an Orphans' Court, Jacob Starr brother of William Starr, came into court and prayed the court to confirm to him the real estate of his brother William held under advisement at the last court. The court approved the sureties offered, and ordered recognizances to be entered into in the usual form. The following appears of record: It appearing from the deposition of William Ramsey, Esq., and draughts annexed filed of record, that the real quantity of said tract of land valued by the inquest at the sum of $24.38 per acre, is 308 acres 64 perches and allowance:

Recognizances were then entered into by Jacob Starr and George Forney and George Snively, his sureties, to Henry Coover, by Henry Coover, his guardian, for the payment of $3817.04, on or before the 1st day of May 1807.

Whereupon it was adjudged by the court, that the said Jacob Starr hold and possess the said tract of land, with the appurtenances, whereof the said William Starr died seised and possessed, to him, his heirs and assigns, for ever, under such conditions as the said William Starr held and possessed the same at the time of his death, and subject to the same recognizances. At an Orphans' Court, held at Carlisle for the county of Cumberland, the sixth day of April, in the year of our Lord 1807, before James Hamilton, President, and his associates, &c., on motion of Mr Watts, stating that upon the confirmation of the valuation of the real estate of John Starr, deceased, recognizances were taken agreeably to law, but by mistake were not entered on the fair records of this court; and on producing the affidavit of George Kober, that at the time the real estate of John Starr, late of Allen township, was confirmed to William Starr, his eldest son, by the Orphans' Court of said county, on the petition of the said William, before that time for that purpose made to the said court, he was present in the said court, to wit, on the 29th day of August 1803, as appears by the record made on the back of the writ of partition, issued on the petition of the said William, and the valuation made of the land in pursuance thereof; and that the said George Kober, together with the said William Starr, did then and there enter into such recognizances as the said court did direct, conditioned for the payment of the several distributive shares of the value of said real estate, agreeably to the valuation thereof made and returned to the said court, the amount of which distributive shares appears of record by the memorandum thereof then made by the clerk of said court, whereupon the said real estate was then and there confirmed to the said William Starr, who is now deceased; and the affidavit of Jacob Miller, stating that he is well acquainted with the family of John Starr, late of Allen township, deceased; that he had children by his former wife, William, now deceased, Jacob, and Elizabeth; and that he had a child by his last wife, now the wife of Valentine Shouffler, one child named Magdalena. Thereupon it appearing to the court that the record of the recognizances, mentioned in the foregoing affidavit of George Kober, have been mislaid, and do not now appear on the records of this court; and it also appearing, by the inquisition taken on the tracts of land in the petition above mentioned, by Robert Grayson, Esq., late sheriff of the county aforesaid, and to the said writ of partition or valuation annexed, holden the 16th day of June, 1803, that the said two certain tracts of land, one situate in East Pennsborough township, containing 100 acres, more or less, the other situate partly in East Pennsborough and partly in Allen townships, in said county, containing 628 acres, more or less, with the appurtenances, could not be divided to and among the parties in the said writ mentioned, without prejudice to and spoiling the whole thereof, the inquest aforesaid had there-

[Shouffler v. Coover.]

fore valued and appraised the said real estate at the sums follow-ing, to wit: The tract of land situate partly in East Penns-borough and partly in Allen townships, at $14,798.64; and the tract of land in East Pennsborough, which contains 68 acres and 93 poles, at the sum of $149.33; making in the whole, the sum of $14,947.97, lawful money; and it also appearing by the records of this court, entered on the original writ of partition, with the inquisition thereunto annexed, that the said real estate of the said John Starr, deceased, was confirmed to the said William on the said 29th day of August 1803.

It is ordered that the recognizances of the said George Kober and Jacob Miller be now taken, if, as is stated, they are willing so to do, for the payment of the distributive shares of the real estate of the said John Starr, deceased, agreeably to the said valuation and inquest to the persons respectively entitled to the same, if the payment has not already been made, as it is suggested to have been done; and that the proceedings and confirmation, as ordered by this court on the said 29th day of August 1803, to the said William Starr, be and remain firm and stable for ever, with-out prejudice to any person, who, for want of the said entries being regularly made, may have been affected thereby; where-upon the recognizances of the said George Kober and Jacob Miller were taken as follows:

Valentine Shouffler and Magdalena his wife in right of said Magdalena, v. George Kober and Jacob Miller. — George Kober held in $9938.35½. Jacob Miller held in $9938.35½.

To be levied of their goods and chattels, lands and tenements, respectively, on this condition, that if the said George Kober and Jacob Miller shall well and truly pay unto the said Valentine Shouffler, and Magdalena his wife, in right of said Magdalena, late widow of said John Starr, deceased, yearly and every year during the life of the said Magdalena, the interest arising from the one-half of the above sum from and after the 29th day of August 1804, if not already done, then this recognizance to be void, otherwise to remain in full force and virtue.

Recognizances of same persons at same time to Henry Coover and Elizabeth his wife, in right of the said Elizabeth. — In $4968.77.6 Also In $2484.50.

Recognizances of the same persons at same time to Jacob Starr. — In same sum.

Recognizances of the same at same time to Fre-derick Long, guardian of Magdalena Starr. — In same sum.

Each conditioned to pay recognizees $2484.38.8, on or before the 29th of August 1804, with interest, if not already done; also

the further sum of $1242.20.4, to said recognizees after the death of the widow of John Starr.

Acknowledged 7th of April 1807, in open court, agreeably to a rule of court this day made and filed in the writ of partition. 8th of December 1817, satisfaction for $2484.38.8, on recognizance of Henry Coover and wife. The memorandum of the clerk, showing the calculation of the amount of the valuation, and each distributive share, is in the pigeon-holes of the clerk's office, containing the calculation of several estates returned at the same term. The following is a full copy of all that relates to this estate:

Release from Frederick Long, filed 17th of March 1828, for the sum due before the death of the widow, dated 29th of February 1808.

### Estate of John Starr.

|  |  |  |  |
|---|---|---|---|
| Amount of valuation - - - - | | | $14947 97 |
| Deduct costs - - - - - - - | | | 40 44 |
| Clerk $9 10 | | | |
| Attorney 8 00 | | ⅓) | 14807 50 |
| Sheriff 23 26 | | | |
| | Widow's share, | | 4964 17 6—9938 35 2 |
| 40 44 | | | |
| To be deducted from } Widow's share. } | Each child, | | 2484 38 8—4968 77 6 |
| | Each child after widow's death, | | 1242 29 4—2484 58 8 |

The tract of woodland referred to in the petition of William Starr, was afterwards valued and appraised, on the petition of Jacob Starr, in December 1808. 16th of May 1809, confirmed to Jacob Starr — recognizances entered into. On the 15th of February 1804, William Starr covenanted to convey to Jacob Starr 200 acres and allowance of the first-mentioned tracts of land, reciting that it was taken by William at the appraisement, &c. William Starr having died before deed made, on the petition of Jacob Miller, his administrator, the contract was duly proved in the Court of Common Pleas, and he authorized to make a deed, which was done 2d of April 1806, in due form.

On the 14th of February 1804, William Starr also covenanted with Henry Coover, to convey to him 201 acres 17 poles and allowance of same tracts of lands; and, on the 19th of February 1807, Jacob Miller, his administrator, executed a deed for the same in due form, the contract having been duly proved, and a decree of the Court of Common Pleas made for the purpose.

April 7th, Jacob Starr by deed conveyed to Jacob Shelly the same lands, &c., by metes and bounds, which were conveyed to the said Jacob Starr by Jacob Miller, administrator of William Starr deceased, by deed before referred to, dated the 2d day of April 1806, consideration $2000. There is no reservation in

[Shouffler v. Coover.]

this deed to Jacob Shelly, and it contains a general warranty, recorded 17th of June 1806.

June 17th, 1819: deed of Henry Coover and wife to John Coover and Adam Reigel, as tenants in common, consideration $3565, for a tract of woodland in Allen township, adjoining Trindle Spring road, and Henry Ford, John Goswiler, William Harkness, Daniel Mayley's heirs, and other lands of Henry Coover, containing 31 acres 9 poles, neat measure, being part of a large tract of 201 acres 17 poles and allowance, reciting that it was conveyed to Henry Coover by the administrator of William Starr, and refers to the agreement and deed before mentioned, granted without reservation, and with a general warranty. 1st of April 1811, deed of Jacob Starr to John Zug, for 47 acres 89 poles, neat measure, part of two tracts of land, containing 146 acres and allowance, reciting that the said Jacob Starr became legally seised and possessed of the same—not recorded—part of the aforesaid lands.

Of the purchase money, Zug retained in his hands $374.79, being the proportional part of the widow's dower on said land, for which he gave his bond to Jacob Starr in the sum of $749.58, conditioned to pay the interest on $374.79, to the widow of John Starr (now intermarried with Valentine Shouffler) yearly, and every year, during her natural life, and the principal thereof at her death to the said Jacob Starr.

Deed, April 14th, 1812: Jacob Starr to John Goswiler—consideration $9513.75, for a tract of land situate in Allen and East Pennsborough townships, bounded, &c. by heirs of Michael Shelly, John Zug, William Harkness, Henry Coover, George Steinberg, Henry Shaffer, and Mr Everly, containing 126 acres 136 poles, and all allowance, reciting as follows: part of two large tracts, the one situate in Allen, the other in East Pennsborough township; and whereas, the commonwealth of Pennsylvania by patent or grant under the state seal, bearing date the 8th day of May, A. D. 1785, for the consideration therein mentioned, did grant and confirm unto John Starr, a certain tract of land situate in Allen township, in the county aforesaid, containing 146 acres and allowance (of which a part of the above-mentioned tract is a part), with the appurtenances, to hold to him, his heirs and assigns for ever, as by said recited patent, recorded in Philadelphia, in Patent Book, No. 3, page 424, more fully appears, &c. And whereas, at an Orphans' Court, held at Carlisle, in and for Cumberland county, the 16th day of April 1803, upon the petition of William Starr, eldest son and heir-at-law of John Starr, who died intestate, praying the court to award an inquest to make partition of the real estate of said intestate in the said petition mentioned to and among his children and representatives, in such manner and in such proportion as, by the laws of Pennsylvania, is directed and appointed, if such partition could be made without prejudice to,

and spoiling the whole, otherwise to value and appraise the same; the said inquest was awarded by the court, according to the prayer of said petitioner, whereupon a writ of valuation or partition issued out of said court, bearing date the 16th day of June 1803, to the sheriff of said county directed, commanding him to summon an inquest, to make partition of the said real estate to and among the children and representatives of said intestate, according to law, if such partition could be made without prejudice to, and spoiling the whole; but if such partition could not be made as above said, then to value and appraise the same; and, that the partition and valuation so made, he should distinctly and openly have before the justices of the said court at Carlisle, the next court following; at which court the sheriff of said county made return thereof, but by mistake or neglect never was entered on the fair records of said court, and lay dormant until the decease of the said petitioner, after which time it was forwarded to said court, and considered by the court that the said William Starr was and should be possessed of the part of the before-mentioned tract of land, situate in Allen township, as fully as ever the deceased was in his lifetime, as in and by the records of said court, relation being thereunto had, appears, by force and virtue of the inquisition, before recited, or some other good conveyance or assurance in the law duly had and executed, the said William Starr became in his lifetime lawfully seised in his demesne of fee of and in the said tract of land with the appurtenances, and being so thereof seised, died intestate, and without issue of his body.

At an Orphans' Court, held the 13th of May 1806, at Carlisle, for the county of Cumberland, came into court Jacob Starr, brother of William Starr, late of East Pennsborough township, deceased, and prayed the court to confirm to him the real estate of his brother, held under advisement at the last court, consisting of a tract of land in said township, and proposed John Forney and George Snively as sureties. The court approved thereof, and ordered the said Jacob Starr with his sureties to enter into a recognizance according to law, for the distributive share of Henry Coover deceased, son and only child of Elizabeth Coover deceased, late Elizabeth Starr, sister and one of the heirs at law of the said William Starr; accordingly the said Jacob Starr did, by which means he became seised and possessed of his brother's real estate, as fully and freely as he, the said deceased, was in his lifetime, as by relation being had to the proceedings of the court, may more fully appear, of which tract part of the above-described tract is a part, by which means the part of the above-described tract, situate in Allen township, lawfully descended to the before-mentioned Jacob Starr in fee, and the part situate in East Pennsborough, containing 21 acres thereof, Leonard Fisher, Sen. did, by his indenture, bearing date 2d of December 1800, grant and confirm unto George Frankleberger, for the consideration therein

[Shouffler v. Coover.]

mentioned, which recited indenture entered in the office for the recording of deeds in Cumberland county, book P, vol. 1, page 302, as by reference being had thereunto more fully appears; and the remainder, which is 21 acres 95 poles and allowance, Leonard Fisher, Sen. and wife, by their indenture, dated 3d of April 1804, did grant and confirm unto the aforesaid George Frankleberger, and to his heirs and assigns for ever, as in and by said deed appears recorded in book Q, vol. 1, page 136; and the said George Frankleberger, by indenture under his hand and seal, dated 19th day of June 1810, for the consideration therein mentioned, did grant and confirm unto the aforesaid Jacob Starr, his heirs and assigns, together with the buildings, improvements, &c., "to the only proper use, benefit, and behoof, of him, the said John Goswiler, his heirs, &c., for ever," with special warranty, recorded 13th of February, 1826. Of this purchase money, Goswiler retained in his hands $664.64, being the proportional part of the widow's dower in said land, for which he gave his bond to Jacob Starr, conditioned to pay the interest on that sum to the widow yearly and every year during her life, and the principal at her death to the said Jacob Starr.

September 8th 1813, deed: John Zug to Robert Campbell for 42 acres, being part of the above-mentioned 47 acres 89 poles, neat measure.

April 5th, 1814, deed from John Goswiler to Robert Campbell, 5 acres, bought of his father—not recorded.

April 5th 1816, deed Robert Campbell and wife to John Goswiler for 42 acres 42 perches neat measure, reciting that part of the aforementioned five acres of land neat measure is a part of the above, and the remaining part of the five acres is surveyed out of another tract of land which the said John Goswiler now occupies, and which he purchased from John Goswiler Sen., by his indenture.

The said deeds from John Zug to Robert Campbell, and from Robert Campbell to John Goswiler, were both deeds with special warranty. Campbell paid Zug by giving to him the bonds of Goswiler on his (Goswiler's) purchase from Campbell, which bonds were drawn from Goswiler to Zug. To August Term 1819, No. 161, Zug brought suit on one of said bonds against Goswiler, which was referred to arbitrators, who, on the 23d August 1819, reported: "We, the arbitrators, do find that the sum of $236.38 is coming to plaintiff, John Zug, being the amount of principal and interest due after deducting the sum of $335.58 upon which the dower of Magdalena Starr, widow and relict of John Starr, deceased, is chargeable, which balance is to remain in the hands of John Goswiler till the death of said widow:" to which award no appeal was ever taken.

April 7th 1824, deed from James Neal, Esq., sheriff, to Charles Higbee, for the same tract of land, situate in Allen township,

(Shouffler v. Coover.)

adjoining lands of William Harkness, Martin Rupp and others, levied on as containing 160 acres, more or less, about 90 acres of said land is cleared, having thereon erected a brick house and brick bank barn, &c., which said tracts of land with the appurtenances were seized and taken in execution and legally sold as the property of John Goswiler, at the suit of Samuel S. Wight.

1st April 1826, deed for the same 126 acres from Charles Higbee to John Coover and Adam Reigle.

15th April 1826, bond of indemnity against this claim if it should ever be made, by Charles Higbee and John D. Mahon to Coover and Reigle.

Deed from Adam Reigle to John Coover for the same land, of the lands of John Starr, then came to Adam Coover through John Zug and Robert Campbell.

$$\text{A. } 42 \;\; 42 \text{ P.}$$
$$\text{Minus} \quad \text{A. } 5$$
$$\overline{\phantom{xxxx}}$$
$$\text{A. } 37 \;\; 42 \text{ P.}$$

From J. Starr thro' J. Goswiler, A. 126 136 P. minus am't conveyed. To Goswiler by Frankleberger, A. 42 95 P. viz: A. 21 95 P.

$$\overline{\phantom{xxx}} \qquad \text{A. } 21 \text{—} 42 \; 94.$$
$$\text{A. } 84 \;\; 41 \text{ P. total am't from Starr.}$$
$$\overline{\phantom{xxxx}}$$
$$\text{A. } 121 \;\; 83 \text{ P. to Coover.}$$

Christian Hoover sworn. I am agent for Shouffler and wife; I pay yearly $62.36 to Shouffler and his wife during her natural life; there are two payments due on the 1st of September; it has never been demanded, and will be paid as soon as it is demanded; it is for a portion of the land which Mr. Coover has; I pay it for Jacob Starr on the dower bonds.

Henry Coover sworn. I bought some of this land, and pay the widow annually $107.77; it has been paid regularly except the last year and part of this; it is ready for her as soon as it is demanded.

Cross-examined.—That sum was fixed out of the land at the time I bought; I got 201 acres and allowance; I have this sum nearly 40 years.

2d April 1828, deed, Jacob Starr and wife to Jacob Meily, recites proceedings of Orphans' Court before read, containing 182 acres 32 perches, subject to widow's dower, the sum of $2539 which is to remain in the premises, interest to be paid annually to widow, $152.34.

Jacob Meily affirmed. I have all paid up to Shouffler and wife till the last; I paid $152.34 annually; the last I am ready to pay when it is due.

Cross-examined.—The money is left in the land, the interest of which I am to pay the widow.

[Shouffler v. Coover.]

Admitted that Jacob Starr sold another piece of land to Jacob Shelly, 200 acres, 7th April 1806, with general warranty. without any reservation on account of widow's dower, but that Meily pays the dower on this tract out of the fund left in his hand by Jacob, and is part of the $152.24.

Defendants again. Read bond under first general exception. Bond, John Zug to Jacob Starr in the sum of $749.50, dated 7th April 1818, conditioned for payment of $374.59 on the death of widow, and interest to be paid yearly and every year to widow. Interest paid for 1819. This bond was sued by Jacob Starr for use of Shouffler and wife *v.* John Zug's administrators, No. 147, January Term 1832.

Admitted that the money is paid on the bond on which this suit was brought. 31st January 1839, Zug paid $622.25, the amount of the instalments secured by that bond and their interest. 28th May 1840, paid $45 in full for two next instalments.

Admitted that John Goswiler is insolvent.

Christian Hoover again.—Cross-examined.—About four years back I began to pay Mrs. Shouffler her interest: in 1836 I procured the money I then paid from Jacob Starr; in 1836 I paid $583.06 to Mrs Shouffler; the year following I made the next payment, and paid annually afterwards the sum of $62.36, that I paid out of my own pocket till I got this money recovered from Zug; Jacob Starr told me to get this money and to pay it over; the balance of this money is in my hands to pay this yearly sum to the widow as it becomes due; I pay it by virtue of an article of agreement in which I bailed Starr to pay this money to the widow in 1836.

Articles of agreement dated 25th November 1835.

Admitted John Zug bought from Jacob Starr:—and also admitted that every thing distrained for had been paid to Shouffler and wife previous to the distress, and that the distress was made for the interest of the person who paid them.

Admitted also, that Jacob Starr paid the widow her interest from 1822 up until 1828, yearly, then there was an interval for a few years until 1836, then they calculated the balance due the widow which was paid as stated by Christian Hoover, and shown by the receipt on Starr's bond to the widow, and since then the payments made to the widow annually.

The court below (Hepburn, President,) was of opinion that the defendant was not entitled to recover, and instructed the jury accordingly, who found for the plaintiff.

*Biddle* and *Watts,* for plaintiff in error. The tract of land subject to distress for the widow's annuity was divided into different parts. Starr and Zug, who had been owners of two of the parts, were compelled to pay not only their own shares, but also that portion which should have been paid by the plaintiff, who owned

another part; and the only question is, whether they may not be substituted to the widow's right of distress, to compel the plaintiff to pay his share. Substitution is an equitable remedy to prevent circuity of action, and will be resorted to in every case, where one in the character of a surety is compelled to pay money for another; and the remedy is one resorted to, not only for the purpose of enabling the person paying to collect the debt from him who should have paid it, but also to put him in possession of all the facilities for collection, which the original creditor had—hence, in the case of *Croft* v. *Moore*, (9 *Watts* 451) it is held, that one surety may be substituted to a plaintiff's rights, in a judgment against two sureties, although an action would lie for contribution. There seems to be no reason why there should not, in this case, be a right of substitution to the remedy which the widow had, by which she compelled the defendants to pay the whole amount of her annuity; 4 *Johns. Chan.* 123; 2 *Rawle* 132; 2 *Kent* 616.

*Reed,* for defendant in error, argued that inasmuch as it was admitted the widow had been paid, no matter by whom, the right of distress was gone, and if she had distrained afterwards, she would have been a trespasser. The remedy is a personal one, and which the widow cannot transfer. 3 *Penn. Rep.* 203; 10 *Watts* 152; 6 *Watts* 221.

The opinion of the Court was delivered by

KENNEDY, J.—This is an action of replevin founded upon a distress made under the authority of the widow of John Starr, deceased, for interest, as it is alleged, coming to her in lieu of her dower, upon the one-third of the valuation money of the real estate of the said deceased, which was taken by his eldest son, William, under a proceeding and decree had in the Orphans' Court of Cumberland county, wherein the estate was situate. The estate consisted of between six and seven hundred acres of land, which was divided by the eldest son, after it was decreed to him, into three parcels, two of which he sold, one to his brother Jacob Starr, and the second to his brother-in-law Henry Coover. The third he retained till his death; when his brother Jacob, as one of his heirs, became the owner of it under a decree of the same Orphans' Court. Jacob Starr subdivided all that he acquired, and sold the most, if not the whole of it, to various persons. In making some of his sales, he left in the hands of the purchasers as much of the purchase money as would enable them to pay their respective proportions of the interest coming to the widow, taking from them, however, a security that they would do so, and at her death pay the principal to himself. Henry Coover disposed of his nearly in a similar manner. At the time the distress was made, there was no interest in arrear or due to the widow or her husband. All that had become payable, had been paid either to her or her husband, by

[Shouffler v. Coover.]

Jacob Starr, John Zug, or some other of the holders of the land. The only question then, which arises in the case is, whether the widow and her husband, who are the plaintiffs in error, had a right to make or cause a distress to be made on the goods of the plaintiff below, who is the defendant in error, for the use of those who it was alleged, had paid beyond their due proportion, to the amount of what it was claimed, he, as a holder of part of the land, ought to have paid, but had failed to do so. It is very clear that the widow had no claim, when the distress was made, as she had been fully paid all that was previously due to her. Distress may be regarded as *festinum remedium,* when not founded upon the previous judgment of a tribunal established for the purpose of administering justice, and being given to the party claiming to be redressed by means of it, to be administered in some degree according to his or her will and judgment in the matter, it would, therefore, seem to be right not to extend it beyond the occasion or the necessity which induced the granting of it, or permit it to be exercised for the benefit of those who do not stand precisely in the situation, in every respect, of the party who was designed to be protected by it. Generally, it is given only in cases where assessments are made to supply the public wants, or rents becoming due annually, under leases made of lands, or under a partition of lands between co-parceners for owelty of the same, or where rent is granted to a widow out of lands, of which she is dowable, in lieu of dower; the law considers the rent or owelty in such cases a *charge of common right,* because a valuable consideration, that is, a right that the party had in the lands charged has been given for it, and therefore, the law gives a remedy by distress for the recovery of it; *Lit. Sec.* 58, 213, 214, 216; 1 *Inst.* 47 *a,* 142 *a,* 169 *b; Gilb. on Rents* 20; or in case of another's cattle *damage feasant,* the right of distress is given from the necessity of the thing itself, as otherwise it might be impossible at a future time to ascertain whose cattle they were that committed the trespass or damage. 3 *Bl. Com.* 6. Although the law gives the lessor a right to distrain, it will not permit the like right to be exercised by the lessee, if he assigns his term reserving a rent, or taking a stipulation from the assignee that he shall pay the rent to the lessor as it shall become payable; 2 *Wils.* 375; and it is said by Mr. Archbold, that the lessee will not be permitted to distrain in such case, even if the deed of assignment contains a clause of distress. 3 *Bl. Com.* 6, *note* (1). Now if it be, that the lessee, who may have paid the rent due to his lessor, cannot distrain upon his assignee for the rent reserved to himself, in order to reimburse what he paid to the lessor, it would seem to indicate that his position is not entitled to the same favour as that of his lessor. And if he cannot distrain under an express reservation of an authority to do so, it is difficult to comprehend upon what ground he shall be permitted to use the name of his lessor for recovering the rent,

[Shouffler v. Coover.]

by way of distress, reserved to himself, or the lessor shall be permitted, after being paid the rent coming to himself, to distrain for the benefit of his lessee. So, if there be lord and tenant by fealty and certain rent, and the lord by deed grant the rent in fee, saving the fealty, and grant further, by the same deed, that the grantee may distrain for the same rent in the tenancy, albeit a distress were incident to the rent in the hands of the grantor, and although the tenant attorn to the grant, yet the grantee can not distrain; because the distress cannot be separated from the seigniory. 1 *Inst.* 150 *b.* These authorities go to show that the right of distress can only be exercised where a particular relationship exists between the parties, and that the party invested with such right cannot transfer it without transferring also along with it the interest to which it is incident; or that the party who was liable to pay the rent and to be distrained for it, on account of his situation, cannot devest himself of that situation by making an assignment of his interest in the land charged with the rent, and at the same time thereby secure to himself a right to distrain on his assignee. And when the lord or the lessor has actually been paid the whole of the rent due by those who were bound to do so, his right to distrain must be considered as gone in regard to that which has been so paid; and upon no principle known, either to the law or equity, can he be permitted to exercise it for the benefit of those whose relative situation, in regard to the duty was such that the policy of the law would not even allow them to stipulate on their own behalf for the exercise of it in their own names. The right on the part of the widow to distrain, in the case before us, was given by law not only from a consideration of the great meritoriousness of her claim upon her husband's estate for a support during her natural life, but likewise from the consideration, that unless the remedy were put into her own hands, to be administered by herself, as her necessities might require it, she might be without the means of support, and the first and great object of the annuity given to her, in some degree defeated by delay in making payment of it to her. But as long as it is promptly paid to her, she cannot distrain, nor can there be any occasion for it. Her wants being supplied, to the full extent of her right under the decree of the Orphans' Court, by those who either had been or were bound to do so, she has no occasion to concern further with the matter, nor right to make a distress for the purpose, as it is claimed here, of administering justice to those who paid her, on the ground that they, as they allege, paid more than their proportion of the annuity coming to her, or that which the plaintiff below ought to have paid. This, certainly her necessity did not require, nor does it seem to have been within the contemplation of the law giving her the right of distress. Besides this, it involves questions of fact and of law, which seem to be opposed to the exercise of the right for such purpose. It

[Shouffler v. Coover.]

cannot be exercised so as to do justice to the several holders of the land charged with the widow's annuity, without having it equally or justly apportioned among them, according to the relative value which each one's share bears to the primitive value of the whole quantity of land. But this neither the widow nor the court has the means of ascertaining; it is a question of fact which can only be determined by a reference of it to a jury. *Hodgkins* v. *Robson*, (1 *Ventr.* 276); *Gilb. on Rents* 189. Then unless the amount for which the distress is to be made can be reduced to certainty it is not clear that a distress can be made on account of it. For it is a maxim in law, that no distress in general can be taken for any duty or services that are not stated with certainty, or so at least as to be capable of being rendered certain; for *oportet quod certa res deducatur in judicium.* 1 *Inst.* 96 *a.* A question of law also may arise, whether it be competent for the original or other tenant of the land, in such case, by his own act, after dividing it into several parcels, to sell and convey the same so divided to different persons, and by doing so to apportion the annuity among them, so that a separate distress may be made on each for his proportion thereof. I take it that he cannot bind the annuitant to observe any apportionment which he may attempt to make in this way; nor yet can she avail herself of it even if she were willing to do so. This would be more than the lessee, yielding a rent service for the land he occupies, could do; though his lessor, it would seem, may by a grant of part of the reversion to a stranger, apportion the rent between himself and the stranger, because the rent is incident, in such case, to the reversion, so that by parting the reversion the rent is apportioned. 1 *Inst.* 148 *a.* This, however, cannot be done by the grantee of a rent charge, which rent, in this particular, somewhat resembles the annuity here; consequently, I take it that neither the tenant of the land in this case, nor yet the widow or annuitant, can divide and apportion the annuity. The annuity here, then, being an entire sum, and incapable of apportionment, and the right of distress being given by the Act of Assembly for that entire sum, one distress only, if sufficient goods are to be found, can be taken for it. *Anon. Moo.* 7; *Anon. Cro. Eliz.* 13; *Wallis* v. *Savill,* (*Lutw.* 1536). But it is said that in the present case a sufficient portion of the purchase money, to be paid by each tenant of the land for his portion thereof, was left in his hands to enable him, by using it, to pay all that is required. Admitting, however, this to be so, still, as it appears that the widow has been satisfied the amount secured to her by the Act of Assembly and the decree of the Orphans' Court, she can have no right to distrain for any greater amount, or any thing above that sum. If Jacob Starr, in disposing of the land, intended to make a further provision in her favour, the right of distress given by the Act of Assembly cannot be extended to that. But, in truth, it would seem that the distress here was

I. — 2 K *

[Shouffler v. Coover.]

made for the benefit of Jacob Starr, and not the widow. Still, however, whether it was for his or her benefit, the remedy by distress is not the one which must be resorted to for the purpose of recovering it. But above all, it is a powerful objection to the distress being made for the claim of the plaintiffs in this case, that no authority or case has been adduced by their counsel going to support it, nor am I aware of an instance in which there has been a subrogation by either a court of law or equity to the remedy by distress.

Judgment affirmed.